# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| SONNY MICHAEL VASQUEZ, ) <br> ) <br> Movant, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Case No. CV416-010 <br> CR413-127 |

## **REPORT AND RECOMMENDATION**

Convicted and sentenced after pleading guilty to being a felon in possession of a firearm and carrying a firearm during and in relation to a drug trafficking crime, (doc. 74 (plea agreement)[1], doc. 75 (judgment)), Sonny Vasquez moves under 28 U.S.C. § 2255 for a sentence reduction. Doc. 93. Review of the parties' briefing shows that his motion must be denied.

## I. BACKGROUND

In April 2014, Vasquez pled guilty to being a felon in possession of

---

[1] All citations are to the criminal docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

a firearm and carrying a firearm during and in relation to a drug trafficking crime. Doc. 75. In return, the government dismissed fourteen other counts that would have substantially increased his sentencing exposure had he gone to trial. *Id.* According to his Presentence Investigation Report (PSR), Vasquez scored a total offense level of 30 for the felon-in-possession count. PSR ¶ 40. Despite the Government's plea agreement promise not to object to an acceptance of responsibility credit, he received no such credit because of his post-arrest participation in a prison riot in which he assaulted correctional officers.[2] PSR ¶ 26-27. With a category VI criminal history, the Guidelines recommended a 168-210 month felon-in-possession sentence. PSR ¶ 86. The statutory maximum limited that to 120 months, while the Guidelines recommend 60 months for his carrying conviction, which had to be imposed consecutive to any other count. PSR ¶¶ 85-86. Vasquez

---

[2] "According to Bulloch County Sheriff's Investigator Walter Deal, on July 3, 2013, Vasquez became disruptive and had to be physically removed from his cell. Vasquez was restrained in a restraint chair and placed in an observation cell. A short time after being restrained, Vasquez managed to free his hands and arms from the restraints. Correction Officer William Craig attempted to reapply the restraints; however, Vasquez resisted and head-butted Officer Craig in the face. The incident was video recorded." PSR ¶ 60. As noted below, the district judge adopted the PSR's findings of fact as his own, including these. PSR Addendum; doc. 84 at 4.

never objected to the PSR and the Court adopted its findings and Guidelines calculations. Doc. 84 at 4.

At his sentencing hearing, Vasquez presented testimony from his attorney in a previous state case, Trasi Campbell, who also happened to be the mother of Vasquez's current girlfriend. Campbell testified about his character during her representation, as well as at the time of sentencing. Doc. 84 at 6-8. On cross-examination, (now-former) Assistant United States Attorney Cameron Ippolito asked about her representation of Vasquez; why she allowed him to plead guilty to a crime she felt he did not commit; his criminal history; and whether she knew her daughter accompanied Vasquez on illegal gun sales. *Id.* at 8-11. Ultimately Ippolito advocated for the statutory maximum (and within-Guidelines) felon-in-possession sentence. *Id.* at 12-13. The Court agreed with the Government and sentenced him to 120 months on that charge, noting that (1) it would have been easy to depart upwards (Vasquez was eligible for a life sentence on his carrying conviction under 18 U.S.C. § 924(c)), and (2) he received an "enormously-helpful-to-him" plea agreement. *Id.* at 16.

Vasquez appealed, but his counsel filed an *Anders*[3] brief and moved to withdraw. Doc. 87. The Eleventh Circuit granted her motion and dismissed after an "independent examination of the record reveal[ed] no arguable issues of merit." *Id.* at 2 (decided October 30, 2014). A few months later, the Government publicly disclosed details of an affair between Ippolito and an ATF agent. *See In re Ippolito*, 2015 WL 424522 (S.D. Ga. Jan. 30, 2015). Vasquez then timely filed the present motion. Doc. 93.

## II. ANALYSIS

Vasquez presents two claims: (1) Ippolito's own extracurricular misconduct,[4] undisclosed at the time of sentencing, impugns her credibility. If disclosed, Vasquez believes it would have led the Court to credit Campbell's testimony and impose a lighter sentence; and (2) his attorney rendered ineffective assistance of counsel by failing to object to the denial of Guidelines credit for acceptance of responsibility. Doc. 93 at

---

[3] *See Anders v. California*, 386 U.S. 738 (1967).

[4] Ippolito "engaged in an improper relationship" with former ATF agent Lou Valoze that tarnished several convictions and sentences unrelated to Vasquez's. *Ippolito*, 2015 WL 424522 at * 1.

4

4, 14.

### A. The Ippolito Factor

Vasquez, though he does not use this label, in essence contends that prosecutorial misconduct (albeit conduct that occurred outside this case's confines) adversely affected his sentence. *See* doc. 1 at 4 ("As Ippolito stood before movant's sentencing Judge clad in the robes of righteousness and justice . . . it is conceivable that the Court may have given Ippolito more credibility . . . then the Court should have . . . given the state of her own character. . . ."). As the Government correctly notes, a misconduct claims justifies relief on collateral review if "the prosecutor's actions rendered the proceedings 'so fundamentally unfair as to deny him due process.'" Doc. 9 at 5 (quoting *Davis v. Zant*, 36 F.3d 1538, 1545 (11th Cir. 1994). Movants thus must show that there is "'a reasonable probability that the outcome was changed' by the prosecutor's actions." *Id.*

Vasquez falls short of meeting that burden. "No matter the prosecutor," and no matter what Ippolito did in her private life, "he likely would have received the exact same sentence," if not one

substantially harsher. Doc. 9 at 7. Vasquez sold drugs and sixteen guns to undercover ATF agents over the course of several visits to a sham business run by law enforcement. PSR ¶ 5-23 (offense conduct section). He fell in the highest (worst) Guidelines criminal history category, and even had one prior conviction for unlicensed dealing in firearms (among the charges dismissed as part of his plea deal in this case). PSR ¶ 49, 56. As a result, his Guidelines range sentence (168-210 months) far exceeded the statutory maximum (120 months). As the Government once again correctly observed: "very little existed in this [case's] record that would support any lesser sentence." Doc. 9 at 7. Indeed, the sentencing judge observed that the sentence imposed might be mistakenly lenient. Doc. 84 at 16.

Campbell's testimony comprised the only mitigating evidence. She thought highly of Vasquez and credited him with saving her daughter's life. Doc. 84 at 9. But she downplayed his criminal history and supported him pleading guilty to a crime she believed he did not commit. *Id.* at 10. That Ippolito pressed her on support for Vasquez in the face of those data points represents nothing more than typical cross-

examination that likely would have occurred regardless of who prosecuted the case.

Even if the Court assumes that contemporaneous knowledge of Ippolito's affair would have utterly destroyed her credibility at sentencing, *Ippolito never testified*. Her credibility has no relationship to Campbell's and even if it did, one mitigating witness who gave testimony of questionable value likely would not have made a difference when stacked against the criminal history and offense severity facing Vasquez. That quantum of evidence certainly isn't enough to show "a reasonable probability that the outcome was changed" by Ippolito's presence at sentencing. *Davis*, 36 F.3d at 1545.

Finally, Vasquez links nothing to the "tainted" facts revealed by the Government:

> (1) that Assistant United States Attorney Cameron Ippolito and ATF Special Agent Lou Valoze engaged for years in an affair; (2) that Agent Valoze, assisted by AUSA Ippolito, provided potentially false or misleading information to a government agency to secure a visa for a government informant; and (3) that Agent Valoze, under questioning by AUSA Ippolito during a criminal trial, provided potentially false or misleading testimony regarding benefits provided to that government informant.

*Ippolito*, 2015 WL 424522 at * 2; *see also id.* ("In every case from 2009 to

the present in which Agent Valoze testified in a contested hearing, including trial, sentencing, or an evidentiary hearing on a suppression or other pretrial motion, from the inception of the affair to the present, the government intends to disclose the fact of the affair to defense counsel. In those contexts, Agent Valoze's testimony arguably was material to guilt or punishment, and the affair could have been a viable subject of cross-examination into his bias."). Vasquez's claim therefore fails.

**B.    Ineffective Assistance of Counsel**

In his second claim, Vasquez argues that he qualified for, but was denied, a Guidelines adjustment for acceptance of responsibility. Doc. 93 at 13. "A timely objection by trial counsel to the probation officer's recommendation that [he] not receive" that credit would, in his view, have overcome the recommendation. *Id.* In his reply brief, Vasquez, for the first time in this case, also claims to suffer severe mental problems, including manic depression and panic attacks, for which he says he takes a variety of powerful pharmaceuticals. *See* doc. 12 at 1. The day of the riot he allegedly participated in (*see* PSR ¶¶ 27, 60), Vasquez says he had such an attack and that led correctional officers to restrain him. Doc. 12

at 2. He then details a "horror story," documented on video, in which "[h]e was restrained to sit in his own urine and feces while" being "verbally and physically abused." *Id.* From that he concludes that it was inappropriate to deny him responsibility credit, and that counsel's failure to make that argument at sentencing constitutes ineffective assistance. *Id.*

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In evaluating adequacy of performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).

Under U.S.S.G. § 3E1.1, the Guidelines adjustment for acceptance of responsibility, courts should consider whether a defendant voluntarily terminates involvement with criminal conduct in deciding if the adjustment should apply. U.S.S.G. § 3E1.1, commentary n. 1(B). What's more, that involvement can outweigh even a guilty plea followed by truthful admission of criminal conduct. *Id.* at n. 3.

Vasquez became disruptive while in federal custody and physically assaulted a correctional officer. Particularly given his extensive criminal history and the offense conduct (sale of *sixteen* firearms to undercover agents after already being convicted of the same crime years before) underlying this case, the sentencing judge was well within his discretion to deny credit for acceptance of responsibility following Vasquez's post-arrest criminal behavior. *Cf. United States v. Wine*, 408 F. App'x 303, 307 (11th Cir. 2011) (denial of acceptance of responsibility credit appropriate where defendant wrote threatening letters from jail after pleading guilty but before sentencing); *United States v. Yue*, 186 F. App'x 872, 876 (11th Cir. 2006) (denial appropriate where defendant lied to magistrate judge about her educational background in order to secure

pretrial release). His attorney's decision to not object to the Court's reasonable rejection of a responsibility adjustment thus does not constitute deficient performance. *See Rivers v. United States*, 2016 WL 2646647 at * 4 (S.D. Ga. May 9, 2016) (failure to contest meritless issues is not ineffective assistance) (citing *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992)).

Vasquez claims mental illness precipitated the need to restrain him and that the prison's response constituted a "horror story." Doc. 12 at 2. That, he says, vitiates the "continued involvement" rationale for denying him an acceptance of responsibility credit. *Id.* Had his attorney made that argument at sentencing, he believes he would have received a lesser sentence. *Id.*

A psychological evaluation conducted two months after the prison riot and head-butting incident, however, revealed that "defendant . . . intentionally misrepresent[ed] neurocognitive and psychiatric impairment." PSR ¶ 74. "[H]is presentation on monitored telephone calls" at the time also "revealed a mental status that was discrepant from his presentation during clinical contacts. Overall, Mr. Vasquez

11

appear[ed] to be malingering [his] problems due to his perception that he might avoid entirely, or receive diminished repercussions for his alleged criminal behavior." *Id*. The district judge adopted those findings and nothing in the present record contradicts that evidence. To be clear: the Court entirely discredits Vasquez's claim that his head-butting of a prison guard stemmed from mental illness, and fully accepts the psychiatric examination in the PSR. It thus rejects his contention that the incident should not affect his acceptance of responsibility credit. Counsel's failure to argue to the contrary, as discussed above, was not ineffective assistance.

### III. CONCLUSION

Accordingly, Sonny Michael Vasquez's § 2255 motion should be **DENIED**. His motions for extensions of time to file a § 2255 motion (doc. 91), and reply (doc. 95) are **DENIED AS MOOT**. His motion for appointment of counsel (doc. 90) is **DENIED**.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb.9, 2009), the Court discerns no COA-worthy issues at this stage of the

12

litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

**SO REPORTED AND RECOMMENDED,** this __5th__ day of August, 2016.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA